ROBERT W. WINTER, Assistant Director, Wisconsin StateUniversities System
You have requested my opinion as to whether the Board of Regents of the University of Wisconsin System may charge student activity fees for the purpose of acquiring accident, death, and disability insurance coverage for the student body.
This policy would provide medical expense coverage, dismemberment and death benefits for occurrences arising out of University sanctioned activities involving off-campus travel.
The Board of Regents in the governance and administration of Chapter 37 Institutions has broad powers under sec. 37.02 (1), Stats. However, in regard to the setting of fees, these powers are somewhat more defined for sec. 37.11 (8) (a), Stats., specifies: *Page 121 
"* * * The board of regents may also charge any student laboratory fees, book rents, fees for special departments or any incidental fee covering all such special costs. * * *"
What the legislature actually intended by the phrase "or any incidental fee covering all such special costs" is open to question. This legislation could be interpreted as referring back to such items as laboratory fees, book rentals, etc. In other words, the language could be interpreted merely as authorizing the Regents to set one fee to cover all such special costs and to eliminate the need of prescribing a fee schedule for each item mentioned in the statute. Further, there is the question of whether the legislature merely intended to set up a class of special fees, or whether the legislature intended that these be the only special fees chargeable.
In addition to the statutes previously referred to, the question involves secs. 20.265 (1) (g), (gm), and (h) Stats. These statutes contain authority for the Board of Regents to charge dormitory fees, dining hall fees, parking rents, etc., but are no more helpful than the statutes first referred to.
I have been advised that the fees chargeable at the various Chapter 37 Institutions vary between the institutions and may cover such diverse and varied activities as athletics, student newspapers, guest speakers, and many other activities. Recently, I have been approached as to whether such fees could be charged and used for a student medical center and for the hiring of legal counsel. I am also under the impression that the charging of these miscellaneous fees and their appropriation for specific programs has, to some extent, been delegated to the separate individual institutions.
Twenty-three years ago in 38 OAG 516 (1949), it was noted that the fees charged and collected under sec. 37.11 (8), Stats., included fees for such items as athletic contests, concerts, class dues, cap and gown fees, etc. This opinion also noted that there was at that time no uniformity between the separate institutions. Although I am of the opinion that a strict interpretation and application of the statute is warranted, such an interpretation at this late date would present many practical, if not legal, difficulties. *Page 122 
The long history of liberal administrative interpretation and use of sec. 37.11 (8), Stats., and general powers of the Board has made it very difficult, if not impossible, for this office to say that this particular fee-supported activity does or does not fall within the statute and powers of the Board. Notwithstanding and regardless of how broad a particular statutory grant may be, and regardless of past administrative interpretation, there are limits as to what may or may not be a proper exercise of authority by the administrative agency.
As to the particular fee and program contemplated, it can be observed that it involves something more than school activities or the well-being of the student as a student. The death benefits payable to the designated beneficiaries of the student clearly exceed, in my opinion, a legitimate interpretation of the fee statute. A somewhat closer question is the dismemberment benefits payable to a student under the proposed program. On the other hand, the medical coverage would seem to be a proper concern of the Board, and a legitimate fee and use under sec. 37.11 (8), Stats.
The question involved is a close question and depends more on a factual determination by the Board of Regents of the University of Wisconsin System as to whether the fee and insurance program serves a legitimate school function or purpose. If, in the Board's opinion, a worthwhile benefit is achieved, which benefit can be demonstrated as relating to the educational purposes of the Chapter 37 Institutions, the fee may be imposed and the insurance program initiated. This is a policy determination, which determination can only be made by the Board of Regents.
It should, perhaps, be called to the Board's attention when it is considering this matter that, if this insurance program is made compulsory, there may be instances where particular students already have such insurance coverage, which policies may have nonduplication of coverage provisions. In such situations, the students would not be receiving the entire benefits or protection that they are forced by Board action to subscribe for.
This fee and program, as in the case of all fees and programs, requires formal Board action.
RWW:CAB *Page 123